ELECTRONICALLY FILED
6/21/2017 3:26 PM
38-CV-2017-900300.00
CIRCUIT COURT OF
HOUSTON COUNTY, ALABAMA
CARLA H. WOODALL, CLERK

DOCUMENT 2

## IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

JAMES SNELLGROVE,

    **Plaintiff,**

v.

**CASE NO: CV-17-**

COMMON BOND TITLE, LLC;
PREFERRED TITLE AGENCY, INC;
*Fictitious Defendants A, B, C, D, E & F
are those engaged in the business of
preparing and completing abstracts and
title searches in connection with the sale
of real property & those persons or
entities for whom defendants were
conducting business on the occasion
described in greater detail below, and/or
are companies or individuals who
contracted with the plaintiff and/or*
Common Bond Title, LLC and/or
Preferred Title Agency, Inc. *and/or other
fictitious defendants that, separately and
severally caused damage to the plaintiff
and/or are employee, agents, apparent
agent, or servants of* Common Bond
Title, LLC and/or Preferred Title Agency,
Inc. *that, separately and severally,
caused damage to the plaintiff.*

    **Defendants.**

## COMPLAINT

    COMES NOW the Plaintiff, James Snellgrove, by and through his attorney of record, and for his Complaint states as follows:

1. The plaintiff, James Snellgrove, is over the age of 19 and a resident of Houston County, Alabama.

2. The property at issue, 16 Harrington Lane, Dothan, AL, is located in Houston County Alabama. The closing and material events at issue occurred in Houston County, Alabama.

3. The Defendant, COMMON BOND TITLE, LLC, is an Alabama Domestic Limited Liability Company.

4. COMMON BOND TITLE, LLC is a continuation of Preferred Title Agency, Inc., an Alabama domestic corporation.

5. Fictitious Defendants A, B, C, D, E & F are those engaged in the business of preparing and completing abstracts and title searches in connection with the sale of real property & those persons or entities for whom Defendant(s) were conducting business on the occasion described in greater detail below, and/or are companies or individuals who contracted with the plaintiff and/or Common Bond Title, LLC and/or Preferred Title Agency, Inc. and/or other fictitious defendants that, separately and severally caused damage to the plaintiff and/or are employee, agents, apparent agent, or servants of Common Bond Title, LLC and/or Preferred Title Agency, Inc. that, separately and severally, caused damage to the plaintiff.

6. Mr. James Snellgrove purchased the property located at 16 Harrington Lane Dothan, AL from Mr. and Mrs. John Braswell on February 26, 2010. Mr. Snellgrove closed on that date. His Deed and original Mortgage, however, were not filed until March 16, 2010. Between the closing date on February 26, 2010 and recording his deed on March 16, 2010, a judgment obtained by Compass Bank against his seller, John W. Braswell for $84,072.85 was recorded on March 8, 2010 and created a cloud on his ownership and Title.

7. In 2010, Mr. Snellgrove closed with Preferred Title Agency, Inc. This may be referred to as the first refinance or the second closing.

8. Preferred Title Agency, Inc. issued Mr. Snellgrove an Owner's Policy of Title Insurance from Stewart Title Guaranty Company. This policy represented to Mr. Snellgrove that the ownership and title to his new home was clear, except for the mortgage he took out to purchase the home with APCO Employees Credit Union. In fact, his title was clouded by a Judgment awarded against Mr. Snellgrove's sellers, which was recorded prior to his title deed, creating a lien. (The Judgment is attached hereto as Exhibit "A" and the Deed is attached hereto as Exhibit "B".)

9. In 2012, Mr. Snellgrove refinanced his home through COMMON BOND TITLE, LLC. The new mortgage was also with APCO Employees Credit Union, and was recorded in Mortgage Book 2195 at Page 592 on July 23, 2012 in the Houston County Alabama Probate Office.

10. Despite the recorded judgment, which prevented Mr. Snellgrove's title from being clear, his loan was refinanced without disclosing to him the defect in his title and ownership.

DOCUMENT 2

11. In November 2016, Mr. Snellgrove attempted to refinance his home with MidSouth Bank and it was discovered that the Compass Bank Judgment had been recorded in between the original 2010 closing date of February 26, 2010, and the recording of his Title Deed on March 16, 2010.

12. In November 2016, Mr. Snellgrove discovered that this Judgment had created a cloud on his ownership and title to his home. Consequently, he was not able to refinance his home with MidSouth.

13. This cloud on his title should not have occurred.

14. This cloud on his title should have been discovered and should have been reported to Mr. Snellgrove when he refinanced his original loan in 2012.

15. Instead it was negligently and/or wantonly and/or intentionally and/or fraudulently suppressed by COMMON BOND TITLE, LLC. and/or other Defendant(s), and he was allowed to proceed with refinancing his loan believing, wrongly, that he owned his home with no title defects.

16. COMMON BOND TITLE, LLC. charged for services that included title and abstract searches that were (a) not performed at all or (b) negligently and/or wantonly performed or (c) performed but the findings, were not reported to Mr. Snellgrove.

17. Mr. Snellgrove sought to refinance his loan in November of 2016. Mr. Snellgrove's interest rate in November 2016 with MidSouth was 3.625%. Despite having excellent credit, he was denied that loan because the title to his home was defective, and that favorable rate was lost. Stewart Title Insurance filed suit and in March of 2017. The Judgment lien was released from Mr. Snellgrove's home, but he lost the favorable interest rate and had to endure worry and emotional distress associated with his home.

18. The best available interest rate Mr. Snellgrove was able to get after this was 4.625%, which was a difference of $76,956.24 over the life of the loan.

19. Mr. Snellgrove, however, paid $8,255.00 to buy down the rate to 4.125%, the lowest rate possible at the time with the buy down. The difference between the interest paid for the original rate of 3.625% and the 4.125% rate was $37,887.21 in extra interest over the life of the loan. Mr. Snellgrove attempted to mitigate his damages, but still suffered damages because of the higher interest rate. The additional interest over the life of the loan ($37,887.21) plus the buy down amount ($8,255.00) totals $46,142.21.

DOCUMENT 2

20. The Statute of limitations is equitably tolled due to the affirmative actions by the Defendant(s) constituting concealment. The plaintiff exercised reasonable diligence to discover his causes of action within the limitations period.

21. True and accurate copies of the following documents are attached to this complaint: (a) A copy of Mr. Snellgrove's Owners Title Insurance Policy (Exhibit "C"); (b) The recorded Deed unto Mr. Snellgrove (previously noted as Exhibit "B"); (c) A copy of the recorded Judgment against Mr. Braswell (previously noted as Exhibit "A"); (d) A copy of the recorded APCO Employees Credit Union Mortgage (Exhibit "D"); (e) The HUD from the 2012 refinance (Exhibit "E").

22. Preferred Title Agency, Inc. was formed in 1997.

23. According to the Secretary of State web page, Preferred Title Agency, Inc. was dissolved October 3, 2012.

24. Common Bond Title, LLC was found January 18, 2012.

25. Common Bond Title, LLC claims "We have served our customers with integrity and service excellence since 1997."

26. Common Bond Title, LLC does business as "Common Bond Title LLC your Preferred Title Agency".

27. Common Bond Title, LLC lists James "Jim" P. Harris and Lynn Hightower-Moore as Managing Members.

28. James P. Harris is Preferred Title Agency's Registered Agent for service and named incorporator. Its registered office street address is 2737 Highland Avenue, Birmingham, Alabama.

29. The name Preferred Title Agency, Inc. is reserved by Lynn Hightower-Moore.

30. Lynn Hightower-Moore was CFO of Preferred Title Agency, Inc. from November 1997 to December 2011; and was managing member of Common Bond Title, LLC from January 2012 to the present.

31. The fraudulent conduct of the Defendant(s) tolls any otherwise applicable statute of limitations.

## COUNT 1 - BREACH OF CONTRACT

32. Plaintiff incorporates the above paragraphs in support of his Complaint.

33. Plaintiff entered into a contract with Defendant(s) for the purpose of examining the title to the Subject Property prior to the refinancing of that property for the identification of defects or other issues which would render the title unmarketable or place a cloud on the title to the Subject Property.

34. In material breach of its agreement, Defendant(s) failed to identify defects in the title to the Subject Property that preexisted conveyance of the Subject Property. A reasonably skillful title examiner would and should have identified these defects and brought the same to the attention of the Plaintiff.

35. The statute of limitations is equitably tolled due to the affirmative actions by the Defendant(s) constituting concealment. The Plaintiff exercised reasonable diligence to discover his causes of action within the limitations period.

36. As a direct and proximate cause of Defendants' breach of its agreement, Plaintiff has suffered damages.

WHEREFORE, Plaintiff prays that judgment be entered in favor of the Plaintiff and against Defendant(s) in an amount to be determined by the jury, plus interest, costs and such further relief as this court deems just and proper.

### COUNT 2 - BREACH OF CONTRACT—THIRD-PARTY BENEFICIARY

37. Plaintiff incorporates the above paragraphs in support of its Complaint.

38. Defendant(s) and/or Fictitious Defendants entered into a valid and binding contract with Defendant(s) and/or Fictitious Defendants, the terms of which included the examination of the title to the subject property the purpose of which was to identify defects or other issues which would render the title unmarketable or place a cloud on the title to the subject property. Plaintiff was the intended beneficiary of that contract.

39. In material breach of this agreement, Defendant(s) and/or Fictitious Defendants failed to identify defects in the title to the subject property. A reasonably skillful title examiner would and should have identified these defects.

40. The Plaintiff was the intended beneficiary of Defendant(s)' agreement to examine the title of the subject property and to identify defects or other issues.

41. Defendant(s) and/or Fictitious Defendants knew or should have known that the failure to have good and marketable title would cause injury to Plaintiff.

42. As a direct and proximate cause of Defendant(s)' actions Plaintiff has suffered and continues to suffer.

DOCUMENT 2

WHEREFORE, Plaintiff prays that judgment be entered in favor of Plaintiff and against Defendant(s) in an amount to be determined by the jury, plus interest, costs and such further relief as this court deems just and proper.

## COUNT 3 – NEGLIGENCE/WANTON AND/OR WILLFULLNESS

43. Plaintiff incorporates above paragraphs in support of his Complaint.

44. Defendant(s) were obligated and owed a duty to Plaintiff to exercise a reasonable degree of skill and diligence in undertaking their preparation of the title abstract and title search and in the examination of the title to the Subject Property.

45. In breach of their duty to the Plaintiff, Defendant(s) negligently and/or wantonly and/or willfully failed to identify defects in the title to the Subject Property that preexisted conveyance of the Subject.

46. A reasonably skillful title examiner and/or abstractor would and should have identified these defects and brought the same to the attention of the Plaintiff.

47. As a direct and proximate cause of Defendant(s)' negligent and/or wanton and/or willful performance of their duties, Plaintiff has suffered and continues to suffer damage.

48. The statute of limitations is tolled due to the fraud of the Defendant(s).

WHEREFORE, the Plaintiff prays that judgment be entered in favor of the Plaintiff and against named and fictitious Defendant(s), jointly and/or severally, in an amount to be determined by the jury in compensatory and punitive damages plus interest, costs and such further relief as this court deems just and proper.

## COUNT 4 - FRAUD

49. Plaintiff incorporates the above paragraphs in support of his Complaint.

50. Defendant(s) made the material and false representation to Plaintiff that he had good title when refinancing in 2012.

51. Defendant(s) knowingly made false statements of fact and false statements of opinion regarding this matter.

52. Defendant(s)' representations were material and relied upon by the Plaintiff. Plaintiff would not have agreed to use Defendant(s)' services a second time if he had known that they had failed to record his deed and original mortgage in a timely manner in 2010. Plaintiff also would not have continued to pay the refinanced mortgage during this relevant time period if he had known he did not have good title.

DOCUMENT 2

53. Defendant(s) knew or should have known that their representations were false.

54. Defendant(s)' fraudulent representations and/or suppressions were made so that it would receive the business and payment for services related to the first refinance of the property and Defendant(s) benefited from same.

55. Defendant(s)' fraudulent representations and/or suppressions were made to conceal the first error it made by the delay in recording.

56. Defendant(s)' fraudulent representations and/or suppressions were made to induce the plaintiff into refinancing with all of the same companies (or successor companies) and thus avoid discovery of the fact that there was a lien on his property.

57. Defendant(s) made material and false representation to Plaintiff that he had good title. Defendant(s) knowingly made false statements of fact and false statements of opinion regarding good title. Defendant(s)' representations were material and relied upon by the Plaintiff. Plaintiff would not have agreed to use Defendant(s)' services a second time if he had known that they had failed to record his title in a timely manner following the initial purchase of the property. Plaintiff also would not have continued to pay the refinanced mortgage during this relevant time period if he had known that the title was not recorded after the first closing and/or that he did not have good title. Defendant(s) knew or should have known that their representations were false. Defendant(s)' fraudulent representations and/or suppressions were made to so that it would receive the business and payment for services related to the first refinance of the property and Defendant(s) benefited from same. Defendant(s)' fraudulent representations and/or suppressions were made to conceal the first error it made regarding the delay in recording the title. Defendant(s)' fraudulent representations and/or suppressions were made to induce the plaintiff into refinancing with all of the same companies (or successor companies) and thus avoid discovery of the fact that there was a lien on his property. Defendant's fraudulent representations and/or suppressions were made to hide the earlier mistake and/or negligent and/or wanton conduct and/or with the intent of inducing the Plaintiff to pay Defendant(s) sums of money for work claimed to have been performed.

58. Defendant(s)' fraudulent representations and/or suppressions were made to hide the earlier mistake and/or negligent and/or wanton conduct.

59. Defendant(s)' fraudulent representations caused Plaintiff injury, including but not limited to monetary loss and emotional distress.

DOCUMENT 2

WHEREFORE, the Plaintiff prays that judgment be entered in favor of the Plaintiff and against named and fictitious Defendant(s), jointly and/or severally, in an amount to be determined by the jury in compensatory and punitive damages plus interest, costs and such further relief as this court deems just and proper.

## COUNT 5 – FRAUD SUPPRESSION

60. Plaintiff incorporates the above paragraphs in support of his Complaint.

61. Defendant(s) fraudulently suppressed the fact that the Plaintiff did not have good title. Defendant(s) knowingly made false statements of fact and false statements of opinion regarding good title. Plaintiff would not have agreed to use Defendant(s)' services a second time if he had known that they had failed to record his title in a timely manner following the initial purchase of the property. Plaintiff also would not have continued to pay the refinanced mortgage during this relevant time period if he had known that the title was not recorded after the first closing and/or that he did not have good title. Defendant(s)' fraudulent suppressions were made to so that it would receive the business and payment for services related to the first refinance of the property and Defendant(s) benefited from same. Defendant(s)' fraudulent suppressions were made to conceal the first error made regarding the delay in recording the title. Defendant(s)' fraudulent suppressions were made to induce the plaintiff into refinancing with all of the same companies (or successor companies) and thus avoid discovery of the fact that there was a lien on his property. Defendant(s)' fraudulent suppressions were made to hide the earlier mistake and/or negligent and/or wanton conduct and/or with the intent of suppressing this fact from the plaintiff so that he would not take action against the Defendant(s) and/or to prevent discovery of the original failure to record until after the statute of limitations had run and/or to cause the Plaintiff to pay Defendant(s) sums of money for work claimed to have been performed that was not performed and/or until such time as Preferred Title Agency, Inc. could be dissolved and avoid responsibility for its actions.

62. Defendant(s)' fraudulent suppression caused Plaintiff injury, including but not limited to monetary loss and emotional distress.

WHEREFORE, the Plaintiff prays that judgment be entered in favor of the Plaintiff and against named and fictitious Defendant(s), jointly and/or severally, in an amount to be determined by the jury in compensatory and punitive damages plus interest, costs and such further relief as this court deems just and proper.

## COUNT 6 - BREACH OF CONTRACT

63. Plaintiff incorporates the above paragraphs in support of his Complaint.

DOCUMENT 2

64. When the Defendant(s) failed to record the deed and mortgage in 2010, it was in breach of the agreement to do same.

65. The statute of limitations is tolled due to the fraud of the Defendant(s).

WHEREFORE, the Plaintiff prays that judgment be entered in favor of the Plaintiff and against named and fictitious Defendant(s), jointly and/or severally, in an amount to be determined by the jury in compensatory and punitive damages plus interest, costs and such further relief as this court deems just and proper.

## COUNT 7 – NEGLIGENCE

66. Plaintiff incorporates the above paragraphs in support of his Complaint.

67. Defendant(s) failed to timely record the deed and mortgage in 2010.

68. The statute of limitations is tolled due to the fraud of the Defendant(s).

WHEREFORE, the Plaintiff prays that judgment be entered in favor of the Plaintiff and against named and fictitious Defendant(s), jointly and/or severally, in an amount to be determined by the jury in compensatory and punitive damages plus interest, costs and such further relief as this court deems just and proper.

## COUNT 8 – UNJUST ENRICHMENT

69. Plaintiff incorporates the above paragraphs in support of his Complaint.

70. Defendant(s) received money for services that it did not perform and/or performed the services, but suppressed the true condition of the title for the plaintiff.

71. Despite this, the Defendant(s) retained payment for these services. Such behavior is unconscionable conduct.

WHEREFORE, the plaintiff prays that judgment be entered in favor of the plaintiff and against named and fictitious Defendant(s), jointly and/or severally, in an amount to be determined by the jury in compensatory and punitive damages plus interest, costs and such further relief as this court deems just and proper.

## COUNT 9
## Violations of the Real Estate Settlement Procedures Act ("RESPA")

72. Plaintiff incorporates the above paragraphs in support of his Complaint.

73. Defendant, COMMON BOND TITLE, LLC, charged for title services that were not performed and were not earned.

DOCUMENT 2

74. The Statute of limitations is equitably tolled due to the affirmative actions by the Defendant(s) constituting concealment. The Plaintiff exercised reasonable diligence to discover his cause of action within the limitations period.

Wherefore, Defendant(s) must pay treble damages to Plaintiff for the charged, unearned fees plus attorney fees.

WHEREFORE, plaintiff requests:

1. Judgment against Defendant(s) for compensatory and punitive damages, including emotional damages suffered as a result of the risk and uncertainty regarding the plaintiff's home;

2. An award to plaintiff of attorney's fees as appropriate for those causes of action for which such recovery is appropriate;

3. Triple damages as appropriate for those causes of action for which such recovery is appropriate;

4. An award to Plaintiff of all costs expended in this action;

5. All other relief to which Plaintiff is entitled; and

6. Such other and further relief which the court deems just and proper.

Respectfully submitted this the 21st day of June, 2017.

/s/ Todd Derrick
Todd Derrick, (DER006)
**Attorney for Plaintiff**
Hall, Derrick & Register, PA
PO Box 1748
360 North Oates Street
Dothan, AL  36302/36303

DOCUMENT 2

Defendants' Addresses are believed to be as follows:

Common Bond Title, LLC
300 Office Park Dr., Suite 230
Mountain Brook, AL  35223

Preferred Title Agency, Inc.
300 Office Park Dr., Suite 230
Mountain Brook, AL  35223